# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

VIRGINIUS A. TURPIN, Receiver,

*v.*

THE BALTIMORE, OHIO AND CHICAGO RAILROAD COMPANY.

*Filed at Ottawa November 20, 1882.*

1. EJECTMENT—*when not maintainable by holder of legal title.* Where the defendant's possession of land is rightful, and the plaintiff is not wrongfully kept out of possession, the action of ejectment can not be maintained. So where the owner of land lets a railway company into possession of a part thereof under a contract for the right of way, which the company fully performs, the former owner can not maintain the action against the company.

2. CONTRACT—*aid of surrounding circumstances in construction.* The surrounding circumstances may be looked at in construing a contract, where there is any uncertainty of meaning.

3. SAME—*circumstances to identify land meant.* In a contract by one of several tenants in common with a railway company it was agreed to convey to the company a right of way over the party's land, a portion of which was described, and in the concluding clause it was provided: "It is understood that the right of way east of Stony Island avenue is to be procured free of cost to the party of the second part, except through one ten-acre tract, which is to be paid by the party of the second part." The lots over which the right of way was then laid and marked were east of the avenue named, and when the party of the first part, by a partition, had acquired such lots in severalty, so that the right of way was on his own land solely: *Held*, that by virtue

of the provision in his contract for procuring the right of way, the railway company might enforce a conveyance of the right of way from him.

4. PURCHASER—*with notice of easement takes subject thereto.* A purchaser of land, with notice that his grantor had agreed to give a right of way over the same to a railway company, for a valuable consideration, takes the premises subject to the rights of such company under its contract with his grantor, and can not maintain ejectment against the company for the land occupied by it rightfully under such contract.

Appeal from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

This was an action of ejectment, brought by Turpin, receiver of the Fidelity Savings Bank and Safe Depository, against the Baltimore, Ohio and Chicago Railway Company, to recover the right of way used and occupied by the latter, being a strip of land sixty-six feet wide, and being thirty-three feet in width on each side of the center line of its roadway, such strip being a part of lots 11 and 13, of Seip's subdivision of the west half of the north-west quarter of section 25, township 38 north, range 14, east of the third principal meridian, running diagonally across said premises in a north-westerly and south-easterly direction. The case was tried by the court below without a jury, and a judgment for the defendant. The plaintiff appealed.

It appears that lots 11 and 13 are part of six lots in a thirty-acre tract; that one Platt owned an undivided one-third of the thirty acres, of which lots 11 and 13 are a part, one Field owned another undivided one-third, and Chauncey T. Bowen owned the other undivided one-third.

Plaintiff's title was derived as follows: Warranty deed from Bowen to Henry H. Honore, dated May 1, 1874, recorded May 19, 1874, conveying an undivided one-third of lots 11 to 16; trust deed from Honore to George W. Smith, to secure $15,000 purchase money, conveying an undivided one-third of lots 11 to 16, dated May 1, 1874, recorded May 19, 1874; indorsed on said trust deed is an agreement, dated

September 11, 1874, between Charles C. Abell, described as owner of lots 11 and 13, and Bowen, described as holder of the notes mentioned in said trust deed, that the lien of the trust deed be assigned to, and rest upon, said lots 11 and 13, and the other lots be relieved therefrom; quitclaim deed from Honore to Charles C. Abell, dated May 13, 1874, recorded same day, conveying an undivided one-third of lots 11 to 16, subject to said trust deed; quitclaim deed from Platt and wife, and Field and wife, to Abell, dated September 11, 1874, and recorded November 24, 1874, conveying lots 11 and 13; decree of sale and foreclosure in the Superior Court of Cook county upon bill, *Turpin, Receiver*, (holder of the notes secured by the above trust deed) v. *Honore et al.*; deed from Franklin Denison, master in chancery, to Turpin, receiver, etc., dated October 29, 1879, recorded November 5, 1879, made on sale under said decree conveying lots 11 and 13. Plaintiff derived his title to the notes secured by said trust deed from Honore to Smith, through the Fidelity Savings Bank and Safe Depository.

The defendant never received any grant of the property, or of any easement in it, from any one. Its claim of right is chiefly under a contract, under seal, made May 13, 1874, between Bowen and one Snyder, of the first part, and the Baltimore, Pittsburg and Chicago Railway Company, Illinois division, of the second part, that then being the name of defendant, its name having since been changed to its present one, under the statute of this State. By this contract the parties of the first part agreed to convey to the railway company a right of way for its railroad through section 31, township 38 north, range 15 east; also, twenty acres additional in said section 31 and in section 32, and the railway company agreed to erect on said premises and contiguous grounds, a round-house and terminal division machine, repair and car shops, the shops to be built of first-class brick or stone, with iron or slate roof, and to cost $200,000. At the

end of the contract, and after the attestation clause, occur these words: "It is understood that the right of way east of Stony Island avenue is to be procured free of cost to the party of the second part, except through one ten-acre tract, which is to be paid by the party of the second part, the right of way west of Stony Island avenue to be procured by the party of the second part at its own expense; and the party of the second part further agrees to locate a station between Seventy-ninth and Eighty-first streets, for local passenger trains."

The premises described in the body of the contract do not embrace the property in dispute, the former lying in sections 31 and 32, and the latter in section 25, but the right of way in dispute is embraced in the concluding clause, within the description, "east of Stony Island avenue," the evidence showing that these two lots, 11 and 13, upon which the right of way is, lie east of Stony Island avenue.

The evidence shows this contract was executed in Baltimore; that its terms had previously been arranged in Chicago; that the defendant, being about to locate its line of railroad from the Indiana State line into Chicago, had three lines surveyed, and marked upon a map of the county, on which map were marked the subdivisions of the lands and the owners' names,—the central of which routes, as shown by the map, was the one now occupied by defendant as a right of way through said lots. Bowen having large real estate interests in the vicinity to be affected by the location of the road, was anxious the present route should be adopted, and an agreement was made in Chicago that the road should be so located, that the road should do the things mentioned above, and Bowen should procure and give defendant certain right of way, a portion of which was that in controversy. Bowen and Snyder then went on to Baltimore, and entered into the above contract of May 13, 1874. This contract was not recorded until December 21, 1876. The deed from Bowen

to Honore, though dated May 1, 1874, was not acknowledged until May 16, and was delivered some time between then and May 19. Bowen testifies, that before selling the land to Honore he told him he had agreed to give the defendant the right of way across these lands, and that in buying he must let the company have the right of way across the land free of charge.

On September 11, 1874, there was a partition made of the thirty acres, between the three co-tenants, and Abell took the entirety of lots 11 and 13, and the indorsement above named, of September 11, 1874, was made on the trust deed, restricting its lien to lots 11 and 13. Bowen says this was done to enable him to fulfill his agreement to give defendant the right of way; that Abell consented to the division, and that the railway track which was then upon the land should remain, and the railroad should retain its right of way across the land, to carry out Bowen's agreement to furnish the right of way, and that to induce Abell to accept this division of the land, Bowen agreed to pay a debt of $2500 from Honore to Abell, to secure which he says the quitclaim deed from Honore to Abell was made, and that that deed was not an absolute conveyance, as it purports on its face.

The trust deed above mentioned, Bowen continued to hold until the winter of 1875 and 1876, when he sold the notes secured by it to the Fidelity Savings Bank, of which plaintiff was receiver. At this time John C. Haines was president of the bank, and he was told of the defendant being entitled to a right of way over the premises. The defendant went into possession of the premises under the contract with Bowen and Snyder, and completed the construction of its road-bed prior to September, 1874, and in that month its cars were running over the right of way, and have been ever since. It appears that the company has performed all the conditions of the contract of May 13, 1874, which were to be performed on its part. There is no contradictory evidence in the case.

Messrs. DUPEE & JUDAH, for the appellant:

Title to real estate can only be obtained by deed. This is true of an easement, which has been defined as "a charge or burden upon one estate (the servient) for the benefit of another (the dominant.)" Bouvier's Law Dictionary; 1 Washburn on Real Prop. *397, 398; Goddard's Law of Easements, 2.

The right of way of a railroad over the land of another is an easement or a license. If an easement, it can rest only upon a grant by deed. 1 Washburn on Real Prop. *397, 398; Goddard's Law of Easements, 88, 89; 3 Kent's Commentaries, *453; *Woodward* v. *Seeley*, 11 Ill. 157; *Forbes* v. *Balenseifer*, 74 id. 183; *Kamphouse* v. *Gaffner*, 73 id. 453.

An easement can not be the subject of dedication unless it be to the whole public. Goddard on Easements, 263, and note; *Vestry of Bermondsey* v. *Brown*, 35 Beav. 226.

If the evidence exhibits any right to the premises in dispute, it is only a license for a right of way. Such license is revocable at will, even when valuable improvements have been made in contemplation of the enjoyment of the right. 1 Washburn on Real Prop. *398, *et seq.*, and cases cited; 3 Kent's Commentaries, *452, and note; Goddard's Law of Easements, 472–475; *Wood* v. *Leadbitter*, 13 M. & W. 838; *Jamieson* v. *Millimann*, 3 Duer, 255; *Morse* v. *Copeland*, 2 Gray, 302; *C. and I. R. R. Co.* v. *Davis*, 86 Ill. 20; *Forbes* v. *Balenseifer*, 74 id. 183; *Kamphouse* v. *Gaffner*, 73 id. 453; *Woodward* v. *Seeley*, 11 id. 157; *St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 102 id. 514.

No estoppel can arise out of any equities which may exist between the parties. Estoppels *in pais*, affecting permanent interests in land, can only be made available in an action of ejectment. *St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514.

Messrs. Waite & Clark, for the appellee:

Appellee has been let into possession under an executory contract, and can not be dispossessed therefrom, having fully performed on its part. *Baldwin* v. *Pool,* 74 Ill. 99; *Smith* v. *Price,* 42 id. 379; *Western Union Telegraph Co.* v. *P. R. R. Co.* 86 id. 251; *Stow* v. *Russell,* 36 id. 23. See, also, authorities cited below.

The plaintiff, to recover in this action of ejectment, must be entitled to possession, which the evidence shows is not the case. *Gridley* v. *Hopkins,* 84 Ill. 532; *Baldwin* v. *Pool,* 74 id. 97; *Kilgour* v. *Gockley,* 83 id. 112; *St. Louis, Alton and Terre Haute R. R. Co.* v. *Karnes,* 101 id. 403.

To maintain ejectment there must be an unlawful entry and an unjust detention. The action of ejectment proceeds for the possession of the premises, claiming that they have been unlawfully entered and unjustly withheld, and facts which go to disprove these make a legal defence. *St. Louis, Alton and Terre Haute R. R. Co.* v. *Karnes,* 101 Ill. 403; *Noble* v. *Christman,* 88 id. 186; *Rees* v. *City of Chicago,* 38 id. 323; *Smith* v. *Pierce,* 41 id. 400.

When one acquiesces in the occupation of his land for the construction of a railroad, and agrees to give the right of way, and lets the railroad into possession, and the road is constructed and put in operation, he can not afterwards maintain ejectment for the land. *Morris* v. *Indianapolis, Bloomington and Western Ry. Co.* 76 Ill. 523; *Baker* v. *Chicago, Rock Island and Pacific R. R. Co.* 57 Mo. 265; *Plovolt* v. *Chicago, Rock Island and Pacific R. R. Co.* id. 256; *Hombach* v. *Cincinnati, etc. R. R. Co.* 20 Ohio St. 81; *McAuley* v. *Western R. R. Co.* 33 Vt. 311; *Baltimore and Ohio R. R. Co.* v. *Straus,* 37 Md. 237; *Williamston, etc. R. R. Co.* v. *Battle,* 66 N. C. 540; *Panott* v. *Palmer,* 3 M. & K. 632; *Duke of Beaufort* v. *Patrick,* 17 Beav. 60; *White* v. *Wahley,* 26 id. 20; *Duke of Devonshire* v. *Elgin,* 14 id. 530; *Oliver* v. *King,* 3 D. M. & Whart. 224; *Goodkin* v. *Cincinnati R. R. Co.* 18

Ohio St. 169; *Dilenan* v. *Ranlan*, 1 McCart. 444; *Torrey* v. *Camden*, 3 C. E. Green, 293.

The construction given to a written contract by the parties, as shown by their acts under it, may be resorted to in determining the true intention they had in entering into the same. *Learers* v. *Clearly*, 75 Ill. 349; *Chicago and Great Eastern Ry. Co.* v. *Vosburg*, 45 id. 312.

Mr. Justice Sheldon delivered the opinion of the Court:

Had Bowen never conveyed to Honore, and had he been himself the party plaintiff here, we should have no doubt that he could not maintain this action of ejectment. He would not have a right to the possession,—defendant would be lawfully in possession, having been let into the possession by Bowen, under a contract for the right of way, which has been fully performed on defendant's part. In such a case, where the defendant's possession is rightful, and the plaintiff is not wrongfully kept out of possession, it is very well settled by the decisions of this court that the action of ejectment can not be sustained. *Stow* v. *Russell*, 36 Ill. 23; *Kilgour* v. *Gockley*, 83 id. 112; *Gridley* v. *Hopkins*, 84 id. 532; *St. Louis, Alton and Terre Haute R. R. Co.* v. *Karnes*, 101 id. 403.

The position taken by plaintiff's counsel is, that the possession of the defendant does not rest upon the written contract of May 13, 1874,—that its rights rest solely upon verbal promises of Bowen to give the right of way without consideration, amounting to no more than a parol license for a right of way, which is revocable at will. This position is based upon the assumption that the contract of May 13, 1874, does not contain any agreement to convey this right of way. It contains no such agreement in terms, but it does in effect. We consider such agreement to be embraced in the following words of the concluding clause of that contract, viz: "It is understood that the right of way east of Stony Island avenue is to be procured free of cost to the party of the second part,

except through one ten-acre tract, which is to be paid by the party of the second part." That ten-acre tract was owned by one Saxton,.from whom defendant afterward obtained the right of way through such tract. The surrounding circumstances may be looked at in construing a contract, where there is any uncertainty of meaning. These two lots (11 and 13) lie east of Stony Island avenue. The line of the railroad had been located, and a map made, with the line of the road marked upon it as running across these lots.

It is, then, clear enough that this provision was an undertaking by Bowen and Snyder, the parties of the first part, that they would procure for the company, free of cost to it, this right of way, and when Bowen, who then owned the undivided third of the thirty acres upon which the right of way was located, afterward, by partition, had set off to him lots 11 and 13 as his share in severalty of the thirty acres, the right of way running through lots 11 and 13 was then on his own land solely, and by virtue of that provision in the contract for procuring the right of way, the railroad company could enforce from him a conveyance of this right of way. There was evidently no verbal promise to give the right of way, distinct from this written contract. Any verbal contract there ever may have been, was embodied in this contract afterward executed, so that thereafter there was no separate verbal promise existing. The circumstances sufficiently show this. It was, then, a written contract for the right of way, made for a valuable consideration, and not a mere verbal promise, without consideration, to give the right of way, revocable at will, under which defendant took possession and claims its right, which right is a sufficient defence as against Bowen.

Honore and the Fidelity Savings Bank occupy no better position than Bowen himself. Honore, when he purchased, was informed by Bowen that he had agreed to give the defendant the right of way across the land, which sufficiently

affected Honore with notice of this contract. Bowen, it is true, did not mention this particular contract, but he said he had agreed to give the right of way to the company, and that in buying the land, Honore must allow the right of way free of charge. Honore had no right to take the agreement to be any other than it was,—a binding contract for the right of way. Bowen's interest, to be sure, was but the undivided one-third of thirty acres; but Honore was bound to know that, on partition, the portion of the thirty acres upon which the right of way was located was liable to be assigned to Bowen as his share, and he took subject to that chance. The Fidelity Savings Bank was fully informed of this particular contract before it took the notes and trust deed; and besides, the company at that time was in possession of the right of way,—running its cars over it,—which would be constructive notice of the company's right. As to Abell, no more need be remarked than that he took, at the most, by his quitclaim deed from Honore, but the equity of redemption, which was cut off by the foreclosure sale and deed. To that foreclosure suit, it may be observed, the railway company was not a party.

The judgment will be affirmed.

*Judgment affirmed.*