## R. F. McNUTT AND CLARA E. WING

### v.

## BLUFORD E. BROOKS.

*Contracts—Construction of.*

1. In construing a contract, what the parties to the same meant and understood the same to mean should, if possible, be ascertained. The actual

meaning of the parties is to be ascertained and adopted, if the words they saw fit to employ and the rules of the law will permit.

2. The situation of the parties at the time, and the situation and condition of the property which is the subject-matter of the contract, and the intention and purposes of the contracting parties, may all be taken into consideration if there is any uncertainty as to its meaning.

3. A reasonable construction is to be sought for and given, and one that will give the contract the sense in which the party making the promise believed the other party understood and accepted it. The final question to be determined is what, by a fair and reasonable interpretation of the words and acts of the parties, was the bargain between them.

4. In an action brought to recover the amount of an assessment for drainage purposes, paid by plaintiff in redeeming certain lands from sale under a tax judgment, from the person purchasing the same during the pendency of a litigation involving the legality of such assessment, a certain written agreement having been entered into between them at the time of the sale touching liability for such assessment, this court construes the same, and declines, in view of the evidence, to interfere with the judgment for the plaintiff.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Coles County; the Hon. J. F. HUGHES, Judge, presiding.

Mr. F. K. DUNN, for appellants.

Mr. A. J. FRYER, for appellee.

BOGGS, J. In 1886 the appellee, Brooks, was the owner of 160 acres of land in Hickory township, Coles County, Illinois. A drainage district had been organized in that township and an assessment for drainage purposes had been made against this land for a total sum of $215.49. One of the ditches contemplated to be dug by the district was located upon and surveyed through these lands of the appellee. At the April term, 1887, of the Coles Circuit Court, a petition in the nature of a *quo warranto* was filed against the drainage commissioner questioning the validity of the organization of the district. This proceeding was continued at that term until the next regular term of the court in November, 1887, at which time it was dismissed by the court at the cost of the petitioners.

The petitioners appealed from such order of dismissal and were finally defeated, the validity of the organization of the district being sustained by our Supreme Court. The appellee having failed or refused to pay these assessments for drainage purposes, a judgment against the lands for them was rendered at the May term, 1887, of the Coles County Court. Under this judgment the lands were sold at the tax sale on the 26th day of May, 1887.

On the 27th day of January, 1889, while the *quo warranto* proceeding was still pending and undetermined in the Supreme Court, and the lands in question still being unredeemed from the sale under the judgment for the drainage taxes, the appellee sold and conveyed the lands to the appellant Clara E. Wing, then Clara E. Roberts. Upon the same day the parties entered into the following agreement:

"Articles of agreement made and entered into this day between Bluford E. Brooks of the one part, and Clara E. Roberts and R. F. McNutt of the other part, witnesseth: that whereas the said Bluford E. Brooks has this day sold to Clara E. Roberts, his farm, in Sec. 33, Tp. 14, R. 9 east, and whereas the commissioners of highways have levied a tax on said land to aid in payment of the construction of a ditch through said lands, and whereas the legality of said assessment has been disputed and a suit is now pending to test the validity of the same, now the said Brooks binds himself to hold the said Clara E. Roberts harmless against said assessment of tax, or any cost thereto attending same, and the said R. F. McNutt and Clara E. Roberts bind themselves in case the ditch is finished as now surveyed, or may be surveyed through said farm, then they, the said McNutt and Roberts, are to pay to said B. E. Brooks said assessment so made as aforesaid, or so much money as he may be compelled to pay out by reason of said assessment as tax on said land, not including any cost attending said suit.

January 27, 1888.                    B. E. BROOKS,
                                     R. F. McNUTT,
                                     CLARA E. ROBERTS,
                                        By R. F. McNUTT."

The *quo warranto* proceeding having been settled by the Supreme Court in favor of the drainage commissioners, the appellee, on the 25th day of May, 1889, redeemed the lands from the sale under the tax judgment.

The ditch through the land was completed by the drainage commissioners on the line as surveyed before appellant Wing became its owner.

Appellee brought this action upon the contract to recover the amount of the assessment for drainage purposes paid by him in making the redemption of the lands. Upon a hearing before the court and a jury, a judgment was rendered in his favor for $215.49, to reverse which appellants prosecute this appeal.

As the construction of this contract is involved in the determination of the case, it is well to state at the outset some general rules governing the interpretation of such instruments. The purpose of all these rules, it must be kept in mind, is to ascertain what the parties to the contract meant and understood the same to mean.

It is true that a court can not always construe a contract to mean what the parties to it meant, but the rule in this respect is that the actual meaning of the parties is to be ascertained and adopted, if the words they saw fit to employ and the rules of the law will permit.

The situation of the parties at the time, and the situation and condition of the property, which is the subject-matter of the contract, and the intention and purposes of the contracting parties, may all be taken into consideration if there is any uncertainty as to the meaning of the contract. 2 Parsons on Contracts, 499; Turpin v. B. O. & C. R. R., 105 Ill. 11.

A reasonable construction is to be sought for and given, and one that will give the contract the sense in which the party making the promise believed the other party understood and accepted it. The final question to be determined is what, by a fair and reasonable interpretation of the words and acts of the parties, was the bargain between them. Wilson v. Marlow, 66 Ill. 385; Wells v. Carpenter, 65 Ill. 447.

The situation of the parties and of the land which was the

subject-matter of the contract will greatly aid us in arriving at a correct conclusion in this case. The appellee, Brooks, was selling the appellant Mrs. Wing (then Roberts) the land, and it is clear that this contract was part and parcel of the contract of sale of the land.

The land was incumbered by a sale under a judgment for ditch taxes; appellee did not want to redeem from this sale because a *quo warranto* proceeding was pending which questioned the validity of the assessment of taxes for which the judgment was rendered. The appellant Mrs. Wing, was not willing to buy the land with this tax sale and its accrued and accruing penalties hanging over it, unless Brooks would protect her against it. This he was willing to do. An agreement to do so would, of course, compel him to redeem the land from the tax sale if the validity of the drainage district organization should be sustained. It was apparent to all the parties that in making such redemption, Brooks would be forced to pay assessments made for the purpose of ditching and drainage and making more valuable land that would belong to Mrs. Wing. The appellants conceded that it would be unjust to require Brooks to pay out his money for this purpose, and were willing to repay to him the amount of the assessments if he was required to redeem, and the ditch was dug as surveyed and then located upon the land, as the lands would then receive the benefits of drainage.

The costs which had accrued in the County Court in the proceeding to recover the tax judgment against the land, the costs of the sale of the land, and the penalties allowed the buyer at the tax sale by the law, were of no value to the appellants or the property, therefore they were not willing to repay such costs or penalties. In short, they were not willing to repay to Brooks anything he might be compelled to pay except the assessments. This was satisfactory to Brooks, and the contract intended to be to this effect was entered into by the parties; such we conceive is the proper construction and interpretation of the contract. The validity of the drainage district was sustained and Brooks was compelled to redeem the lands. He did so, and seeks to have appellants repay the amount of

the assessments for drainage purposes only, not including the costs of the tax judgment and sale proceeding, nor the penalties or percentages allowed the purchaser at the tax sale under the revenue laws of the State.

Appellants say that the contract bound them to pay "said assessments or so much money as he (Brooks) may be compelled to pay out by reason of said assessments as tax on said land, *not including any costs attending said suit.*" They further say, and offered to prove in the court below, that a portion of the costs attending the *quo warranto* proceeding was paid by the commissioners, and that the commissioners expended other large sums of money by way of attorneys' fees and other expenses in defending against the *quo warranto* case. These sums appellants' counsel urge were paid from the fund raised by assessment for drainage purposes, and to that extent depleted that fund, which must be replenished by future assessments upon the property in the district, including the land in question, the effect of which, in their view, is to require the payment by the appellant Mrs. Wing, of costs of the *quo warranto* case.

This contract is, as they view it, that they are "not to pay any cost attending said suit," and that it should be so construed. It can not be denied that the appellant Mrs. Wing may be required to pay future assessments which would not have been levied but for the fact that a portion of the fund had been expended in payment of costs and otherwise, about the *quo warranto* proceeding.

We, however, see nothing in the contract binding the appellee to protect her against this. The contract only binds the appellee to hold her "harmless against the said assessment of tax and any cost attending the same;" that is, any cost attending the assessment of the tax, or the judgment and sale of the land therefor. That is the extent of his undertaking, not only by the words of the contract, but that is all, as we believe, that was in the contemplation of either of the parties when the contract was executed. The appellee was not a party to the *quo warranto* proceeding, did not make and was not liable to pay any of the cost accruing in it, and had

no control whatever over it. But counsel for appellants urge that the contract expressly provides that the appellants are not to pay any costs attending that suit, either directly or indirectly. We do not so read or understand it.

In that respect the contract is that the appellants are to repay to Brooks " so much money as he may be compelled to pay out by reason of said assessment as tax on the land, not including any costs attending said suit."

This is not a contract that the appellants shall not be bound to pay any costs in the suit, but only that they shall not be required to pay Brooks any costs that he may be compelled to pay. He was not compelled to pay any such cost. He does not include any such costs in the sum demanded. He seeks to have repaid only the amount of the assessment as tax on land paid by him. This a fair and reasonable construction of the contract entitles him to have, and it was in this sense it seems clear to us that all the parties understood the contract when it was made.

The testimony as to the amount paid by the drainage commissioners by way of costs, attorneys' fees or otherwise, in and about the *quo warranto* proceeding, was wholly irrelevant and was properly rejected by the court.

It is further insisted by counsel for the appellants that the appellee can not recover because it is not shown by the evidence that he was " compelled " to pay the assessments, etc. It is not shown by the proof whether or not the purchaser at the tax sale complied with the law authorizing the execution by the county clerk of a tax deed.

In the absence of such proof counsel for appellants say that it does not appear that appellee was compelled to make the redemption. An instruction to that effect was asked of the court and refused.

The contract recites that the legality of the assessment is disputed and that the pending suit was to determine as to its validity. They desired to await its determination before paying such assessments, that is, before making redemption from the tax sale, and they entered into this contract for the mutual protection of both parties in the meantime.

All understood that if held valid the assessments would be compelled to be paid and in that sense the word was used in the contract. When the Supreme Court sustained its validity the legal contract or compulsion to pay, because valid, at once arose, and the appellee was then, within the true intent and meaning of this contract, compelled to pay them. He did so, and it is wholly immaterial whether or not he was able to make such proof concerning a compliance with the laws authorizing the issuance of tax deeds, as would be required before the holder of such a deed could recover the title in an action of ejectment.

The defenses attempted to be presented in this case are without merit and we find no error in the record.

The judgment is affirmed.

*Judgment affirmed.*