Curtis v. Hawley.

## Bernard Curtis v. Henry S. Hawley.

1. Construction of Contracts—*Circumstances Under Which a Contract is Executed.*—The intention of the parties to a contract is to be ascertained from the contract, regard being had to the circumstances under which it was executed. It can not be presumed that such parties used terms without intending some meaning should be given to them.

2. Same—*Interpretation of the Contracting Parties.*—It is allowable always to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning, and it should not be so construed as to give one party an unreasonable advantage over the other, unless such is the manifest intention.

3. Abstracts of Title—*Defined.*—The term "abstract," as used in relation to land, is commonly understood to mean a writing in which is set forth the chain of the record title, containing all matters of record affecting the title and necessary to be considered in determining in whom the record title was at a date named.

4. Conveyances—*To Correct Errors—Effect of—Construction.*— Where an administrator, in the right of his wife, joins in a conveyance of real estate (for, by the common law, the husband of an administratrix was an administrator in right of his wife) to remedy a defect in a former conveyance by him of the same premises, he does not thereby release covenants made to him individually, and not as administrator. Such conveyance will have all the effect intended by the statute, the court and the grantors, without affecting the individual rights or obligations of any of the grantors.

Assumpsit, for money paid, etc.—Appeal from the Circuit Court of Cook County; the Hon. Charles G. Neely, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 3, 1899.

THOMAS E. D. BRADLEY, attorney for appellant.

In the construction of contracts the general rule is that the intention of the parties shall be ascertained and adopted if possible. Bishop on Contracts, Sec. 380; Field v. Leiter, 118 Ill. 17.

The second principal rule of construction is that words are to be understood in their ordinary and popular meaning. Lawson on Contracts, Sec. 387; Stearns v. Sweet, 78 Ill. 446.

Another cardinal rule of construction is that where a contract will admit of more than one construction, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts in the event of litigation concerning it. The People v. Murphy, 119 Ill. 159.

Where an authority is given by law to executors, administrators, guardians or other officers, to make sales of lands, upon being duly licensed by the courts, and they are required to advertise the sales in a particular manner and to observe other formalities in their proceedings, the lapse of sufficient time (which in most cases is fixed at thirty years) raises a conclusive presumption that all the legal formalities of the sale were observed. 1 Greenl. on Ev., Sec. 20.


K. K. KNAPP, attorney for appellee.

" The law is, that one who advances money in part payment of a parol purchase of land, can not recover it back, till he has offered to fulfill the parol agreement, and the other party has repudiated it by refusing to perform." Crabtree v. Wells, 19 Ill. 55.

The intention of the parties to a deed is of prime importance in construing the deed. If the court can learn the intention of the parties the transaction will be construed so as to carry that intention into effect. Lehndorf v. Cope, 122 Ill. 317; Piper v. Connelly, 108 Ill. 651.

If one makes a feoffment with warranty to the feoffee, his heirs and assigns, and the feoffee re-infeoffs the feoffor and his wife, or the feoffor and a stranger, in these cases the warranty is not defeated. Bacon, Vol. 10, 413; 19 Am.

& Eng. Ency., 1021, n. 4; Hobbs v. King, 59 Ky. (2 Met.) 139. When one conveys in his own right and afterwards acquires title in trust, express or implied, there is no estoppel. Kelley v. Jenness, 50 Me. 455; Jackson v. Hoffman, 9 Cowen, 273; Sinclair v. Jackson, 8 Cowen, 565.

Mr. Justice ADAMS delivered the opinion of the court.

The appellant purchased from appellee certain premises in Lake county, Illinois, known as Slusser's Park, and paid to appelleee $500 of the purchase money, for which appellee gave a receipt, as follows:

" October 4, 1892.

Received of B. Curtis, five hundred dollars, on account of purchase of property at Gray's Lake, known as Slusser's Park, for the sum of seven thousand dollars, provided the abstract is correct; if not satisfactory, the money is to be returned.                    HENRY S. HAWLEY."

Appellee, in pursuance of the agreement, delivered to F. W. Young, appellant's attorney, about October 6th or 7th, an abstract of the title to the premises. Mr. Young examined the abstract and, in his opinion thereon, made several objections to it, all of which, except one, were waived by appellant. The objection not waived, but insisted on, is as follows:

" Garwood and wife conveyed to Doddridge Bryant by deed dated December 5, 1850. For some reason or other the administrators, joined by Bryant as the husband of one of them, made a new deed to Samuel Garwood, dated March 21, 1854, several years after Bryant had acquired the title. If this deed had any effect, it operated to revest the title in Samuel Garwood, and so far as the abstract shows, that title remains in him yet. The present title is derived through Bryant, but the legal record title appears to be outstanding in Garwood."

On this opinion being given, the appellant declared that the abstract was not satisfactory to him. Young's opinion was written October 11th, and the next day he went, at appellant's request, to appellee's office and explained to appellee the objection to the title above stated, when he, Young, says that appellee said that he could straighten it up in a little time—a week or ten days. Subsequently, the

following correspondence, illustrating the views of the parties, took place between Young and appellee:

"October 15, 1892.

F. W. Young, Esq., R. 24 Reaper Block, Chicago, Ill.

Dear Sir: I return you herewith abstract to my property at Gray's Lake, and your opinion of title to same. Also enclose you herewith letter written me by Mr. Whitney, of Waukegan, dated October 14, explaining certain questions raised by you in the opinion given by you to Mr. Curtis. You will also notice that the abstracter made a mistake in copying description of the deed from Ender to me. Mr. Whitney had the abstract corrected and sent the deed to me, which shows that the description of the deed was correct.

I trust Mr. Whitney's letter referred to will enable you to pass title to this property."    Yours truly,

Henry S. Hawley."

"Oct. 20, 1892.

Mr. Henry S. Hawley:

Dear Sir: I have reply from Mr. Whitney with copy additional records, leaving, however; the defect (as I view it) unchanged. Mr. Whitney thinks it is no defect. I am sorry to say that I can not agree with him and can not take the responsibility of reporting a perfect title unless a quitclaim deed can be obtained from Samuel Garwood if living, or his heirs if dead, or a proceeding be carried through court to dispose of what I regard as the interest outstanding in him.    Yours very respt.,

F. W. Young."

"Chicago, Oct. 28, 1892.

F. W. Young, Esq., attorney, Reaper Block, Chicago, Ill.

Dear Sir: Yours of the 20th inst. at hand. I am advised and believe that the title to the property sold by me to Mr. Curtis is perfect, but in order to satisfy you and to avoid any misunderstanding, I have taken steps to find Samuel Garwood if living, or his heirs if dead, and will attempt to procure the quit-claim deed suggested by you. At the same time I wish to state that if I am unable to do this I shall still expect Mr. Curtis to accept the property and pay the purchase price as agreed.

I hope to be able to inform you whether I can find Samuel Garwood, if living, or his heirs if dead, within a few days.    Yours truly,

Henry S. Hawley."

" Oct. 29th, 1892.

Mr. Henry S. Hawley:

Dear Sir: Yours of 28th rec'd. I am surprised that better lawyers than myself (and I have no doubt but that they are all better than I am) should differ with me upon the question involved in the validity of your title.

I hope you will succeed in settling the matter in the way suggested. I will certainly not advise Mr. Curtis to accept the title unless the objection be removed, and I have no fears from what may result from any legal contest that may grow out of the matter.

Yours very respectfully,

F. W. Young."

"November 9th, 1892.

Mr. Henry S. Hawley:

Mr. Curtis is very much put out by the delay in perfecting the title to the Gray's Lake property. He expected from the purport of your letter of the 28th and our subsequent telephone communications that the matter would be settled one way or another long before this time. He is waiting at great inconvenience, as other pending arrangements are kept in suspense depending on the outcome of this. He returned to Burlington last evening and desired me to say to you that he will hold himself in readiness to be called back by telegraph any time this week, if you succeed as proposed in procuring the quit-claim deed to perfect title, but that if you do not succeed in perfecting the title so that the transaction between you and himself can be carried out before the end of the present week (which is certainly a reasonable length of time) he will consider that the transaction is not to be carried out.

Yours very respectfully,
F. W. Young."

" Dec. 6, 1892.

Mr. Henry S. Hawley:

Dear Sir: I suppose it may now be regarded as settled that the trade between you and Mr. Curtis relative to the Gray's Lake property is off, and nothing remains to be done but surrender your receipt and take check for the $500 earnest money.

Mr. Curtis has left the receipt with me to be surrendered for check. Shall I send if to your office or will you send for it? Yours respectfully,

F. W. Young."

"December 7, 1892.

F. W. YOUNG, ESQ., 95 Clark St., Chicago, Ill.

DEAR SIR: Your letter 6th inst. received. I do not understand that the trade between Mr. Curtis and myself is off. As I wrote you Oct. 28, I am advised and believe that the title to the property sold by me to Mr. Curtis is perfect, but in order to satisfy you and avoid any misunderstanding, I immediately upon receipt of your letter of Oct. 20th took steps to find Samuel Garwood, if living, or his heirs, if dead, and obtain quit-claim from him or them. Doing this, however, simply to satisfy you; and had I not succeeded I should still expect Mr. Curtis to accept the property and pay the purchase price as agreed. I have obtained at considerable expense and trouble a quit-claim deed from all the heirs of Samuel Garwood, and am ready to deliver same to Mr. Curtis with warranty deed to the property, and would request that you name early date when this transaction can be closed.

Yours truly,

HENRY S. HAWLEY."

"Dec. 8, 1892.

MR. HENRY S. HAWLEY:

DEAR SIR: Your favor of 7th inst. is rec'd. Regret to note from tenor of its contents that there is prospect of a lawsuit about the money; for Mr. Curtis has now no use for the property, having been obliged to provide other property after waiting a longer time even than you demanded for you to perfect title.        Yours very respt.,

F. W. YOUNG."

Appellant testified that Mr. Young was authorized by him to write the letters signed by Mr. Young. No reply was received to Young's letter of November 9th. It appears from the evidence that appellant was lessee of and occupying certain premises at Burlington, Wisconsin, his lease of which expired November 10, 1892, and that he purchased the leased premises about the middle of November and they were conveyed to him about December 24, 1892. It is contended by counsel for appellee that all that is meant by the receipt in question is that appellee should furnish a correct abstract, showing the title of record, which abstract, considered as an abstract, should be satisfactory to appellant; that the words used in the receipt do not

mean or contemplate that appellee should furnish an abstract showing the recorded legal title in him; that no objection was made by appellant to the abstract as an abstract, but merely that it did not show title in appellee. In other words, appellee's counsel contends that even though the abstract should plainly show that the title to the premises was in a third party, and that appellee never had any interest in the premises, yet if the abstract was correct in so showing, and that, in being correct, it was satisfactory as an abstract, appellee would have discharged his undertaking, and there can be no recovery. It necessarily follows from this construction that the provision for an abstract can subserve no useful purpose; that it is utterly meaningless, and that appellant is practically in the same situation he would have been in had there been no provision in the receipt for the return to him of the money paid. A construction logically resulting in such an absurdity must be rejected.

Counsel for appellant, on the other hand, contends that the question is one of good faith; that if appellant, in good faith, objected to the title, as shown by the abstract, that was the end of the matter, and there can be no recovery. In other words, notwithstanding the abstract shows legal title in appellee, yet if appellant honestly and in good faith, but mistakenly, expressed dissatisfaction with the title, he is entitled to recover. Neither can we agree with this contention.

The intention of the parties to a contract is to be ascertained from the contract, regard being had to the circumstances under which it was executed. Turpin v. B. O. & C. R. R. Co., 105 Ill. 11; Piper v. Connelly, 108 Ib. 646, 651; Kuecken v. Voltz, 110 Ib. 264.

And it can not be presumed that the parties used words or terms without intending some meaning should be given to them. Lehndorf v. Cope, 122 Ill. 317, 322.

And "it is allowable, always, to look to the interpretation the contracting parties placed on their agreement, either contemporaneously or in its performance, for assist-

ance in ascertaining its true meaning." Vermont St. M. E. Church v. Brose, 104 Ill. 206, 212.

A contract should not be so construed as to give one party an unreasonable advantage over the other, unless such was the manifest intention. Gale v. Dean, 20 Ill. 320, 323.

Appellant had purchased from appellee certain premises at an agreed price, and was willing to complete the purchase by payment of the entire agreed price, on appellee furnishing a correct and satisfactory abstract, and appellee agreed to furnish such an abstract. The word abstract, as used in relation to land, is commonly understood to mean a writing in which is set forth the chain of the record title, and containing all matters of record affecting the title, and necessary to be considered in determining in whom the record title was at the date of the abstract. Such was the abstract which appellant required and which appellee agreed to furnish. Can it be reasonably contended that it was the intention of appellee to furnish an abstract showing title in a stranger to premises of which he claimed to be the owner and for which he asked $7,000, or the intention of the appellant to pay that sum on evidence, however correct, that appellee was not the owner? Such contention is manifestly absurd. The parties practically construed the contract otherwise. Appellant made no objection to the abstract as being incorrect, or at all, as an abstract. His objection was that it showed the legal title to be in Garwood and not in appellee. Neither did appellee contend merely that it was a correct abstract, and, therefore, should be satisfactory, but, while insisting that it showed the title in himself, undertook, for the purpose of obviating appellant's objection, to obtain a quit-claim clearing up the objection. If the abstract showed an outstanding legal title in Garwood, appellant is entitled to recover, and *vice versa*.

The following appears from the abstract: David Hendee died intestate August 26, 1848, being at the time of his death the owner in fee of the premises; and September 30, 1848, letters of administration of his estate were issued to his widow, Ann W. Hendee, and Orville Slusser.

March 8, 1850, Ann W. Hendee and Doddridge Bryant were married.

May 10, 1850, a petition was filed in the County Court of Lake County by Orville Slusser and Ann W. Bryant, administrators of the estate of David Hendee, deceased, and Doddridge Bryant, administrator in right of his wife, for leave to sell real estate to pay debts. May 13, 1850, the County Court entered an order granting the prayer of the petition and ordering the sale of the premises in question.

July 6, 1850, Doddridge Bryant, Orville Slusser and Ann W. Bryant, administrators of the estate of David Hendee, deceased, conveyed the premises by special warranty deed to Samuel Garwood, and the deed was recorded February 23, 1854. It is noted in the abstract that this deed recites the entering of the order and decree of sale; also that the sale was confirmed.

December 5, 1850, Samuel Garwood and wife executed to Doddridge Bryant a special warranty deed of the premises, which, February 23, 1854, was recorded.

March 21, 1854, Ann W. Bryant, late Hendee, and Orville Slusser, administrators of the estate of David Hendee, deceased, and Doddridge Bryant, " administrator in right of wife in said estate," conveyed the premises to Samuel Garwood, which conveyance was recorded March 22, 1854. In this deed the decree of the County Court ordering sale was recited in full.

The contention of counsel for appellee is, that the deed of July 6, 1850, from the administrators to Samuel Garwood, was void, in that it did not set forth at large the order of the County Court directing a sale, but merely recited the entry of that order; and that the deed from the administrators to Garwood of March 21, 1854, in which the order of the County Court is set forth at large, was made to correct the error in the deed of July 6, 1850; and that, by virtue of the covenants in the deed of December 5, 1850, from Garwood and wife to Bryant, the title conveyed to Garwood by the second administrators' deed inured to Bryant. Appellant, on the contrary, contends that Bryant,

by joining in the deed of March 21, 1854, as a grantor,
released the covenants in the deed from Garwood and wife
to him, leaving the legal title in Garwood.   The act in
relation to husband and wife had not then been passed, and
by the common law, the husband of an administratrix was
an administrator in right of his wife.   Schouler's Executors
and Administrators, Sec. 106; 7 Am. & Eng. Ency., 1st
Ed., Vol. 7, p. 175, note.

Bryant, as such administrator, joined in the petition to
the County Court for leave to sell the premises; the court
granted an order of sale as prayed for; the statute then in
force provided that the sale should be made and the con-
veyance executed by the executor or administrator apply-
ing for the order (Rev. Stat. 1845, Sec. 105), and Bryant
joined in the conveyance " as administrator in right of wife
in said estate."

Counsel for appellant cites Huls v. Buntin, 47 Ill. 399,
in support of the proposition that it is not necessary to the
validity of the deed of an administratrix that her husband
should join in it as a grantor, which may be conceded, but
it does not follow that prior to the passage of the act of
1861, and while the common law as to husband and wife
remained in force, he might not have so joined.   Besides,
Bryant having joined as administrator in right of his wife
in the application for the order of sale, and the statute pro-
viding that the administrator applying for such order
should execute the conveyance, we are not prepared to say
that it was unnecessary for him to join in the conveyance.
But the intention of Bryant in joining in the deed is to be
looked to (Piper v. Connelly, 108 Ill. 646; Lehndorf v.
Cope, 122, Ib. 317), and it is, we think, apparent that he so
joined merely as administrator in right of his wife, and for
the sole purpose of correcting the fatal defect in the deed
to Garwood of July 6, 1850, which deed was invalid in not
setting out the order of the County Court at large.   Smith
v. Hileman, 1 Scam. 323.

Suppose Bryant had been the sole administrator and,
acting as such, had executed the deed to Garwood of March

21, 1854, could it be successfully contended that he thereby released covenants made to him individually and not as administrator? Clearly not; and if by the execution of such a deed, as sole administrator, he would not release covenants personal to himself, how could it be said that by joining as administrator with other administrators he. released such covenants?

Counsel for appellant cites Vincent v. Morrison, Breese, 230, to the effect that covenants of warranty in a deed by administrators bind the administrators personally. In such case the administrators, in making such covenants, are not acting as administrators, because as administrators they can not bind the estate or the heirs by covenants of warranty, and to give the covenants any force they must be held to bind the administrators. In the present case the conveyance can have all the effect intended by the statute, the County Court and the grantors, without affecting the individual rights or obligations of any of the grantors.

We are of opinion that the title to the premises conveyed by the administrators' deed of July 6, 1850, to Samuel Garwood, passed by inurement to Doddridge Bryant, by virtue of the covenants in the former deed from Garwood and wife to Bryant, and that there is not, so far as shown by the abstract, any outstanding legal title in Garwood.

Counsel for appellant has urged other objections, none of which we deem tenable. The judgment will be affirmed.