## Charles H. Slack v. Kate Knox.

### Gen. No. 11,339.

114  435
r213s 190

1. INJUNCTION—*when, lies to restrain interference with steam connection and supply.* The remedy at law is inadequate where the injury in question would have consisted in cutting off the steam connections and the steam supply of the complainant, where the use of such steam was necessary to the complainant and would have proved a serious detriment to her business and would have resulted in a damage difficult, if not impossible, to estimate; and consequently, the remedy by injunction lies in favor of the tenant, as complainant, and against the landlord, as defendant.

2. REVOCABLE LICENSE—*what is not.* Held, from the particular facts of this case, that the complainant's right to the use of certain steam was not by virtue of a license revocable at will.

3. GRANT—*how, construed.* A grant will be construed according to the condition of things as they existed at the time it was made.

4. CONSTRUCTION OF CONTRACT—*interpretation of parties as bearing upon.* It is allowable in case of doubt to look to the interpretation of the parties to a contract in order to ascertain its true meaning.

Proceeding to restrain interference with steam supply, etc. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed June 9, 1904.

MUSGRAVE, VROMAN & LEE, for appellant.

FRANKLIN P. SIMONS and PLINY B. SMITH, for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellee, who was a tenant of the appellant, Slack, by a written lease, of the entire second floor of a six-story and basement brick and stone building, known as Nos. 45, 47 and 49 Randolph street, Chicago, filed her bill against appellant August 31, 1903, to restrain him from interfering with a steam pipe connecting appellant's steam boiler in the basement of said building with the hot water tank, steam tables and apparatus of appellee upon the demised premises, and from cutting off the supply of steam from said boiler to said leased premises. A preliminary injunction was issued in accordance with the prayer of the bill, and subsequently the bill was amended without prejudice to the injunction, and a general and special demurrer of appellant thereto was overruled. The appellant having elected to stand by his demurrer, the court rendered a decree finding the facts substantially as alleged in the bill, and making the injunction permanent. From this decree this appeal is prosecuted, and it is claimed that the demurrer should have been sustained for a number of reasons, the first of which is that the bill does not show what sort of rights appellee claims in the demised premises, viz., whether she claims an easement, an implied easement or an appurtenance, or all three put together. We think it is immaterial what name may be given to the rights claimed by appellee, since the bill states sufficient facts from which her rights with regard to the demised premises sufficiently appear. These facts are admitted by the demurrer, and are, in substance, as follows: Appellant, being the owner of said six-story and basement building, in October, 1899, was conducting on its first floor a wholesale and retail grocery business, and in the basement maintained a steam plant which he used for running freight and passenger elevators in the building, and from which pipes run to different parts of the building which conveyed steam for heating and other purposes. October 30, 1899, appellee leased from

appellant the entire second floor of the building, the lease providing that the floor should be occupied for a women's club room, and for no other purpose whatsoever, the term commencing November 10, 1899, and extending to April 10, 1902, at a monthly rental of $500. Appellee's business was known as the "Women's Club," and she furnished parlors, retiring rooms, books and other reading matter, and conducted in connection with the club a restaurant for club members, as well as for other women. She took possession of said leased premises for the purpose of carrying on said business, equipped the same by building partitions and furnishing necessary furniture, dishes, etc., for maintaining and carrying on the restaurant, and equipped a kitchen with ranges, heaters, and all utensils and apparatus necessary to supply the patrons of the restaurant, among which apparatus and equipment that she placed in the leased premises were steam or heated tables, for the purpose of heating, keeping warm and fit for use the food cooked for the patrons of the restaurant, which tables it was necessary to heat by steam; she also erected and placed in the kitchen a boiler or tank for the purpose of heating water, of which a large amount was required for washing dishes and for various other purposes about the restaurant. With the consent of appellant, for the purpose of supplying steam for heating the tables and water in said tank, she caused a steam pipe to be connected with appellant's steam boiler in the basement, and to be extended through the freight elevator shaft to the leased premises, and connected with said hot water tank and steam tables; this connection of the steam pipe was made under the direction and supervision of appellant's engineer. The heating of the water in said tank and the heating of said tables was an absolute necessity in carrying on and maintaining the said business of appellee. No provision was made in the lease to supply appellee with steam heat except between the first day of September and the 30th day of April in each year.

The bill after making the foregoing statements, has the following allegation, to wit: "And defendant thereupon

requested complainant in consideration of said connection with said steam boiler to clean and keep clean the hallways and stairs from the second floor of said building to the front doorway or public entrance thereto at her own expense, which your oratrix consented to and thereafter did."

Appellee during the term of this lease maintained said connection and used steam from appellant's boiler for said tables and hot water tank, which was during all that time known to appellant. Before that lease expired, and on July 25, 1901, appellant made a new lease of the same premises for a term commencing April 10, 1902, and extending to April 30, 1907, at a monthly rental of $500. At the time this second lease was made, and continuously from that time until August 5, 1903, the condition of said leased premises with reference to said steam connection with appellant's boiler remained the same, and appellee's hot water tank and tables were during all that time supplied with steam from appellant's boiler, which connection, it is alleged, was appurtenant to said leased premises, and the right to have the same remain and be maintained in the same condition in which it had been maintained, and the right to use in connection with the demised premises the said steam pipe and the steam conveyed thereby for the purposes for which appellee had used it, was granted and conveyed to appellee by said lease as such appurtenance, or an easement was created in said leased premises by appellant to appellee to the extent and for the purpose above stated for and during the term of said second lease. Appellee, in her said restaurant business, furnished meals to about 2,400 persons daily, and the furniture, fixtures and furnishings placed by her in the leased premises were, when the bill was filed, of the value of not less than $10,000.

·August 5, 1903, appellant sent to appellee the following notice in writing, signed by him, to wit:

" DEAR MADAM : Your excessive use of water and steam and the increased cost of coal and labor have made it impossible for me longer to furnish you with steam for your restaurant in exchange for the service you render me in

having your porter clean the hallway from your floor down to the front doorway. If you desire me to furnish you steam for your restaurant after August 31st, it will cost you $50 per month, including the service of your porter in keeping the hallway from your floor down to the front doorway clean, as you are now and have been doing."

It further appears that appellee did not and had not, up to the time of filing this bill, used water nor steam excessively, but only as required by the necessities of her said business, and as she had been accustomed to do during the terms of both the leases, except that the same had been increased by the growth and expansion of her business. Appellee, through her attorney, after receiving said notice, claimed to appellant that she was entitled to the use of steam to be used in her said business without extra charge, but he denied such right, and threatened to cut off her supply of steam, the apparatus being so arranged that the steam could be shut off by appellant without entering upon the leased premises, and that this could be done almost instantaneously. If appellee should be deprived of said steam for a single day it would cause her great annoyance and loss and serious damage to her said business. In case the supply should be cut off she could only carry on her said business by the erection of a steam plant upon the demised premises at great expense, and the same would occupy a considerable space thereof and deprive her of the use of such space, which was necessary for her to carry on her said business. The erection of said steam plant upon the leased premises would expose the same, her property, servants and patrons to the risk of serious injury, would require for its management skilled employees, and increase the cost of service and the cost of insurance on her property, and she would thereby lose, not only the cost of the erection of such a steam plant, but she would be put to a permanent, fixed and current expense, and be deprived of the use in her business of a portion of the leased premises.

All the foregoing facts appearing from the allegations of the bill, we are of opinion it is sufficient, as a pleading, in view of the conclusions which we will state to sustain the decree.

It is claimed that upon the face of the bill appellee has an adequate and complete remedy at law, and therefore that equity should not entertain jurisdiction. We think from the facts above stated that a court of equity was justified in assuming jurisdiction under the bill and in granting the decree. The steam connection and the use of steam appear to be matters of necessity to appellee and to deprive her of them would prove a serious detriment to her business, which it would be extremely difficult, if not impossible, to ascertain definitely. In High on Injunctions, sec. 1150 (7th ed.), the author says: "As between landlord and tenant courts of equity have protected and enjoined a landlord from interfering with the premises leased, on the ground that the tenant was entitled to use, occupy and operate the premises in the manner and condition, and with the appurtenances existing at time the lease was made." This text is supported by cases cited by the author, and by Thropp v. Field, 26 N. J. Eq. 82; Gans v. Hughes, 14 N. Y. Sup. 930; Manhattan Co. v. N. J. Stk. Yd. Co., 23 N. J. Eq. 157-66; Parish v. Vance, 110 Ill. App. 50, as well as by numerous authorities (which might be cited) to the effect that where one contracting party about to be injured by another's wrongful act, has not a plain, adequate and complete remedy at law, he may resort to equity. In this connection it is argued that because it appears that appellee, by the payment of $50 per month to appellant, might have the steam connections maintained and the steam furnished to her continuously, she could in no event be damaged more than $50 per month, and therefore her damages may be easily ascertained. We think the question of equity jurisdiction is to be determined by the situation and circumstances as presented in the bill, and according to the rights of the respective parties as they then existed, and not by what might be the situation in case appellee should pay the extra charge demanded, and then resort to an action to recover the money. Granting that she might have this remedy, she might have to bring more than forty suits before the end of her term, and she could not be required

Slack v. Knox.

to take this course in order to get her rights. We are of opinion that her remedy, under the facts stated in the bill and when it was filed, was not plain, adequate and complete.

It is contended on behalf of appellant that the alleged right of appellee to have him furnish steam to her for use in her business, is neither an easement nor an appurtenance which passed by the second lease, but is a mere license, revocable at his pleasure, and that it was revoked by the notice of August 5, 1903. We deem it unnecessary to follow the extended argument of appellant's counsel on these points, nor to determine whether or not, under the facts stated, appellee had a license to the use of steam, or whether the right which she claimed was an easement or an appurtenance in the strict sense of these terms as defined in the books and adjudicated cases. There is a seeming conflict in the authorities, but after a careful examination of very many of the numerous cases cited and relied upon by the respective counsel, we are of opinion it is not a revocable license, and whether appellee's right to use steam through the connection between appellant's boiler and the steam tables and water tank on the demised premises is an easement or appurtenance in a strict sense, is not important. Whatever the right may be, it passed to her by virtue of the second lease as an incident to that demise. In other words, she was entitled, under said second lease, to use the leased premises in the same manner, with the same rights, privileges and conveniences, and under like conditions as she had used the same during the term of the first lease. This seems to us just and equitable, under the facts shown, and in accord with the evident intention of both the parties at the time the second lease was made and for some fourteen months thereafter. This view is, in our opinion, sustained by the weight of authority, and seems to us consonant with equity and fair dealing. Hadden v. Shoultz, 15 Ill. 583–5; Thomas v. Wiggers, 41 Ill. 470; Bliss v. Kennedy, 43 Ill. 72; Shelby v. C. & E. I. R. R., 143 Ill. 385–401; Pool v. Blakie, 53 Ill. 502; L. & N. R. R. v. Koelle, 104 Ill. 460;

Piper v. Connelly, 108 Ill. 651; Wilson v. Roots, 119 Ill. 386; Jarvis v. Milling Co., 173 Ill. 195; Torrence v. Shedd, 156 Ill. 202; U. S. v. Appleton, 1 Sumner, 492; Gans v. Hughes, 14 N. Y. Sup. 930; Thropp v. Field, 26 N. J. Eq. 85; Spencer v. Kilmer, 151 N. Y. 398; Cummings v. Perry, 169 Mass. 150; Leighton v. Ricker, 54 N. E. Rep. 254; Sheldon v. Hamilton, 47 Atl. Rep. 316 (R. I.); Barrett v. Bell, 82 Mo. 110; Dolliff v. B. & M. R. R., 68 Me. 173; Chicago, W. & M. Co. v. Ills., etc., Co., 35 Ill. App. 144; Parish v. Vance, 110 Ill. App. 50 and 57; Coolidge v. Hager, 43 Vt. 9.

In the Hadden case, the Supreme Court, in speaking of a previous decision, where it was held that in construing a grant by the government, it was proper to consider the circumstances under which it was made in order to determine what was intended to be granted, said : " The law must give a common sense construction to grants, and consider the state of things, and the consideration in view of the parties at the time the grant is made, which moves them to its execution and acceptance." The court referred approvingly to the case in 1st Sumner, 492, cited *supra*, a very thoroughly considered case, the opinion being delivered by Mr. Justice Story, in which the court considered whether the use of certain side doors and windows of leased premises, and a passage therefrom over a piazza of adjoining premises, passed by a conveyance to the defendant, the same having been customarily used by defendant's grantor prior to the conveyance. The court held that the grant carried, by necessary implication, a right to use the doors and windows and the passage as it had been and as it was used prior to and up to the time of the conveyance, and say, among other things : " The general rule of law is, that when a house or store is conveyed by the owner thereof, everything then belonging to, and in use for, the house or store, as an incident or appurtenance, passes by the grant. It is implied from the nature of the grant, unless it contains some restriction, that the grantee shall possess the house in the manner, and with the same beneficial rights, as were then in use and belonged to it. * * * In the

construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. In truth, every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for."

The cases cited *supra*, in the main, under varying circumstances, sustain the general principles above stated, and in the Jarvis case, *supra*, the Supreme Court said: "The deed or grant of conveyance need not contain the word ' appurtenance ' or similar expression in order that appurtenances will pass thereby." This language was used in considering whether the grantee of a mill property had the right to use a mill-pond, the court holding that the question was whether the use of the pond passed as a necessary appurtenance to the mill property, and not whether the mill could be operated without the pond.

In the Thomas case, *supra*, the owner of a building who occupied a part of it in which he had a steam engine in use, leased another part of the building to a tenant whose business required the use of steam, the lease providing that the tenant should have one-half of the steam power then produced by the landlord's engine for ten hours each day. The landlord destroyed the pipe by means of which the tenant was supplied with steam, and in a suit for damages the tenant was allowed to prove that he had occupied the premises under other leases from the same landlord, and had used the steam in a certain manner which was supplied to him by means of the pipes which the landlord destroyed. The court reaffirmed the principle announced in the Hadden case, *supra*, and in referring to and applying the same principle in effect which was announced in a New York case, say: "So here ' the arrangements openly existing ' at the date of this agreement, in and about the premises granted, were an unobstructed passage of the exhaust steam from the exhaust pipe of the engine, through

another pipe fitted with a stop-cock furnished by the plaintiff, to a steambox in which plaintiff then, and for some months before, under oral and written leases from the defendant, had used, and was then using for steaming wood to soften it for bending, to be used in his various manufactures, and which was indispensable to him for such purpose, and this was well known to the defendant. He therefore had no right, after this agreement was made, to change materially the value of any of the respective parts of this property." Counsel for appellee claim that this case has no application here, for the reason that steam was a part of the thing demised by the lease, and exhaust steam, the matter which the court was specially considering, passed under the term appurtenances, which was used in the lease. We cannot yield assent to this view, but are of opinion that the case is important as reaffirming the principle that a grant will be construed according to the condition of things as they existed at the time it was made.

In the Piper case, *supra*, the Supreme Court reaffirmed the principle of the Hadden case, and in speaking on a question of the construction of a grant, said: " The question of intention must be settled by the language of the deed, and all the attendant circumstances in evidence, and not merely by the letter in the descriptive part of the deed."

Similar decisions in principle are found in a number of the cases cited, and in the Gans case, *supra*, the Supreme Court of New York, in considering whether a lease of certain premises " to be used as a bakery " included the right to water as incidental to the business of a bakery, it being contended that the permission of the landlord to make the water connection was a mere license which he had a right to revoke at his pleasure, said: " Leases, like other agreements, are to be construed so as to carry out the intention of the parties. When premises are leased for an expressed purpose, everything necessary to the use and enjoyment of the demised premises for such expressed purpose must be implied where it is not expressed in the lease," and held that water being necessary and incidental to the use of the

Slack v. Knox.

premises as a bakery, the landlord having consented to the water connection being made by the tenant after he went into possession, the landlord would be enjoined from any interference with the use of the water on the premises for the purpose for which they were hired, and that his permission to make the connection was not a mere license which he could revoke at pleasure, but was an appurtenance of and implied in the lease itself; also that, if it were a subject of license, it was attached to a grant of the property, and being coupled with an interest could not be revoked during the existence of the grant.

In the Thropp case, the New Jersey Court of Appeals, in the case of a lease of certain premises which bound the lessor to furnish necessary power for the lessee's machinery, and a blast was necessary to his forges, which had been actually supplied under a former lease by the same landlord, and was being supplied when the lease in question was made, it was stated in the bill that the blast was part of the power, and the court, in this regard, say: "However that may be, so essential an incident to the demised premises may well have been regarded by the parties as constituting part of them, and therefore as passing by the lease accordingly."

The Court of Appeals of New York in the Spencer case, *supra*, had under consideration a conveyance of land which contained a fish pond then in use, with visible artificial appliances for supplying it with water from a source on a portion of the same tract retained by the grantor, which water supply was essential to a reasonable use and enjoyment of the property conveyed, and held that if the grantor after making the conveyance, destroyed or removed the appliances by which the water was furnished to the pond, he could be compelled to restore the same and pay damages. The court say: "When the owner of a tract of land conveys a distinct part of it to another, he impliedly grants all those apparent and visible easements which at the time of the grant were in use by the owner for the benefit of the part so granted, and which are essential to a reason-

able use and enjoyment of the estate conveyed. The rule is not limited to continuous easements or to the case where the use is absolutely necessary to the enjoyment of the thing granted."

We think the case at bar is clearly within the principles announced in the last three cases referred to. The use of steam was essential to the reasonable use and enjoyment of the demised premises, although it may not have been, in a strict sense, absolutely necessary to such enjoyment. The appellant had consented to that use for a period of years, and it was being enjoyed by the appellee at the time of making the second lease. This was an apparent and visible use so far as the parties were concerned. We think she should not now be deprived of it.

In some of the cases cited, to which we have not specifically referred, views which conflict with the decisions last referred to are expressed, but they all seem to hold, in effect, that when the rights, privileges and easements in question are directly necessary to the proper enjoyment of the granted estate, then they pass by implication, or as incident or appurtenant to the estate granted. Moreover, they each have special facts which we think distinguish them from this case.

Great stress is laid by appellant's counsel upon the claim that the steam connection in question was the result of a verbal agreement between appellant and appellee after the first lease was made, which was founded upon a separate and distinct consideration, and cannot be implied or injected into the second lease. It is true that the steam connection was made after the commencement of the term under the first lease, and there seems to have been a separate and distinct agreement by appellee that she would clean and keep clean the hallways and stairs from the second floor to the front doorway or public entrance of the building, at her own expense. The steam was furnished, apparently under this arrangement, during the term of the first lease. The connection existed, the steam was being furnished by appellant, and appellee was cleaning the hallways when the second lease was made, and nothing being

said upon the subject at that time, we are of the opinion that, under the cases cited, that lease, when construed in the light of the circumstances then existing, granted to appellee the right to the use of the steam without further charge or expense to her than she had previously undertaken. Such was the intention of the parties, as evidenced by the practical construction placed upon the lease by them for sixteen months of the term, and that is always important in case of any doubt such as arises here by virtue of the circumstances existing at the time the second lease was made. It is always allowable, in case of doubt, to look to the interpretation of the parties to a contract in its performance in order to ascertain its meaning. Storey v. Storey, 125 Ill. 613; Work v. Welsh, 160 Ill. 468–74; Purcell Co. v. Sage, 200 Ill. 342–6; Curtis v. Hawley, 85 Ill. App., 429–35, and cases cited; Dowiat v. People, 193 Ill. 264–7; Mueller v. University, 195 Ill. 236–55. In the Work case the court says: "Where a contract or agreement is in any manner indefinite or uncertain, or the parties have by their own conduct placed a construction upon it which is reasonable, courts will adopt such construction." In the Curtis case this court said: "It is allowable, always, to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning."

The decree is in our opinion without error, and is affirmed.

*Affirmed.*